**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| PENNY JO BARNETT, *individually, and as personal representative of the estate of Edward Barnett*, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Defendant. )<br>_____) | No. 2:20-cv-02517-DCN<br><br>**ORDER** |

The following matter is before the court on defendant United States of America's (the "government") motion in limine to preclude plaintiff Penny Jo Barnett's ("Barnett") retained expert from offering testimony in accordance with her untimely report, ECF No. 76. For the reasons set forth below, the court grants in part and denies in part the motion.

## I. BACKGROUND

This admiralty and maritime action arises out of the Miss June vessel's allision with a contraction dike in the Cooper River in North Charleston, South Carolina on July 6, 2018. The allision resulted in the death of the operator of the vessel, Edward Barnett (the "decedent"). The dike and surrounding navigation lights are owned and operated by the government. According to the operative amended complaint, ECF No. 28, the navigation lights on the dike were not functioning properly at the time of the allision such that the dike was not visible to approaching boaters. On July 2, 2020, Barnett filed the instant action against the government in her individual capacity and as personal representative of the estate of the decedent. ECF No. 1. Barnett alleges a wrongful death cause of action, pursuant to S.C. Code Ann. § 15-51-10, and a survival cause of action for

1

the decedent's pain and suffering prior to his death, pursuant to S.C. Code Ann. § 15-5-90.

Under the third consent amended scheduling order, the parties established that the deadline for Barnett's expert disclosures was May 28, 2021, the deadline for Barnett's rebuttal expert disclosures was July 19, 2021, and the discovery deadline was August 5, 2021. ECF No. 38. On May 28, 2021, Barnett served the government with an expert disclosure from Stephanie Whetsel Borzendowski, PhD ("Dr. Borzendowski") (the "May report"). ECF No. 76-1. On November 11, 2021, Barnett served another expert disclosure from Dr. Borzendowski (the "November report"). ECF No. 76-2. The November report included (1) a revised list of the materials reviewed by Dr. Borzendowski—including the addition of thirteen new depositions as well as photographs and videos taken from Dr. Borzendowski's visit to the allision site on October 25, 2021, (2) a revised six-page report, (3) new entries in Dr. Borzendowski's curriculum vitae, and (4) twenty-nine photographs dated October 25, 2021 that were taken by Dr. Borzendowski during her visit to the allision scene.

On November 18, 2021, the government filed a motion in limine to partially exclude the testimony of Dr. Borzendowski. ECF No. 76. Barnett responded in opposition on December 2, 2021, ECF No. 83, and the government replied on December 7, 2021, ECF No. 87. As such, this motion has been fully briefed and is now ripe for review.

## II. STANDARD

### A. Motion in Limine

The purpose of a motion in limine is to obtain a preliminary ruling on the admissibility of a particular evidentiary matter. Luce v. United States, 469 U.S. 38, 40 n.2 (1984). A court will exclude evidence on a motion in limine only if the evidence is "clearly inadmissible for any purpose." Hall v. Sterling Park Dist., 2012 WL 1050302, at *2 (N.D. Ill. Mar. 28, 2012).

### B. Expert Disclosures and Rule 26

Federal Rule of Civil Procedure 26(a)(2)(A) requires litigants to disclose "the identity of any witness [they] may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Rule 26(a)(2)(B) further requires litigants to produce written reports for any witness who is "retained or specially employed to provide expert testimony in the case" or "whose duties as the party's employee regularly involve giving expert testimony." Those reports must include:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). Rule 37(c)(1) "gives teeth" to the Rule 26(a)(2) requirements by "forbidding a party's use of improperly disclosed information at a trial, at a hearing, or on a motion, unless the party's failure to disclose is substantially justified or harmless." Tokai Corp. v. Easton Enters., 632 F.3d 1358, 1365 (Fed. Cir. 2011).

Under Rule 26(e), with respect to expert reports, a party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Fed. R. Civ. P. 26(e). Rule 26(e) permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report. Keener v. United States, 181 F.R.D. 639, 640 (D. Mont. 1998); Coles v. Perry, 217 F.R.D. 1, 3 (D.D.C. 2003) ("Fed. R. Civ. P. 26(e) does not grant a license to supplement a previously filed expert report because a party wants to, but instead imposes an obligation to supplement the report when a party discovers the information it has disclosed is incomplete or incorrect.").

### III.  DISCUSSION

The government argues that the November report is untimely and improper under Rules 26 and 37. Accordingly, the government moves to preclude Dr. Borzendowski's testimony to the extent that it encroaches on any opinions expressed in the November report or any facts or data considered by Dr. Borzendowski since the disclosure of the May report.

Barnett raises two arguments in response: first, that the November report was a supplemental report under Rule 26(e); and second, that the government would not be unfairly prejudiced if Dr. Borzendowski testifies on the November report. The court addresses each argument in turn, ultimately determining that testimony on the November report is inadmissible at trial except for Dr. Borzendowski's background testimony.

#### A. Supplemental Report

Rule 26(e)(1) requires supplementation when a "party learns that in some material respect the information disclosed is incomplete or incorrect." Courts within the Fourth

4

Circuit have held that Rule 26(e) permits supplemental reports only to "correct inadvertent errors or omissions." Gallagher v. S. Source Packaging, LLC, 568 F. Supp. 2d 624, 630 (W.D.N.C. 2008). For instance, in Akeva L.L.C. v. Mizuno Corp., the court reasoned that "to construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would [wreak] havoc in docket control and amount to unlimited expert opinion preparation." 212 F.R.D. 306, 310 (M.D.N.C. 2002). Similarly, in Disney Enterprises, Inc. v. Kappos, the court granted a motion in limine to preclude an expert from testifying about an opinion provided in a supplemental report because the analysis therein "could have and should have been made" in the original expert report. 923 F. Supp. 2d 788, 795–96 (E.D. Va. 2013).

Barnett argues that the November report was "a supplemental report" that was provided "pursuant to Rule 26." ECF No. 83 at 4. However, Barnett fails to specify how the May report was originally incomplete or incorrect such that it needed supplementing—indeed Barnett concedes that "[n]othing was deficient about the opinions in Dr. Borzendowski's first report." Id. Barnett instead argues that Dr. Borzendowski needed to supplement her report to reflect additional materials provided by the government after the close of discovery as well as new "deposition transcripts as they became available so that she would not later be asked at trial why she had not reviewed materials that came to light after her first report." Id. However, to accept this expansive interpretation of "supplementation" would lead to the type of impermissible bolstering of expert opinions that was rejected by the Akeva and Disney Enterprises courts. The court refuses to countenance such a result.

If Barnett believed that there were materials provided by the government that urgently needed to be reflected in Dr. Borzendowski's report, the proper recourse would have been to seek a modification of the scheduling order. Compare Carpenter v. Trammel, 2019 WL 2088425, at *3 (W.D.N.C. May 13, 2019) (rejecting a supplemental expert report in part because the plaintiff failed to "seek another extension of the expert report deadline" so that the expert could have access to the purportedly necessary records), with Hartford Life Ins. Co. v. Montgomery, 2014 WL 12609459 (D.S.C. Sept. 11, 2014) (permitting an untimely expert report to stand based on a finding of good cause under Rule 16(b)(4), allowing for amendments to a scheduling order). Barnett failed to do so. Moreover, even if the supplemental report were intended to reflect materials provided by the government, Barnett still fails to explain why Dr. Borzendowski chose to visit the scene of the allision again on October 25, 2021—nearly five months after Dr. Borzendowski's expert disclosure was due. Therefore, the court is constrained to view Barnett's purportedly supplemental report as an improper attempt to introduce Dr. Borzendowski's opinion on evidence that Barnett wished to—but failed to—include in the May report.

**B. Unfair Prejudice**

Next, Barnett contends that even if the November report were not supplemental, allowing Dr. Borzendowski to testify about its contents would not unfairly prejudice the government. Under Federal Rule of Civil Procedure 37(c)(1), the court has "broad discretion" to determine whether an untimely discovery disclosure is substantially justified or harmless. S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 596 (4th Cir. 2003). Here, the court finds that Barnett's failure to timely disclose the

November report was not substantially justified or harmless. In determining whether nondisclosure of evidence is substantially justified or harmless, the court looks to:

> (1) the surprise to the party against whom the witness was to have testified; (2) the ability of the party to cure that surprise; (3) the extent to which allowing the testimony would disrupt the trial; (4) the explanation for the party's failure to name the witness before trial; and (5) the importance of the testimony.

Id. at 595–96 (4th Cir. 2003) (internal citations omitted).

Barnett focuses primarily on the first factor, arguing that Dr. Borzendowski did not provide any new opinions in the November report. See ECF No. 76-2 at 2 ("This supplemental report does not contain any new opinions."). Instead, Barnett claims that the November report was only intended to update the information that Dr. Borzendowski relied upon "out of an abundance of caution." ECF No. 83 at 4. However, even if the additions to the November report did not constitute opinions, the report may still present a "surprise" to the government. Indeed, Barnett concedes that paragraph 2 of the November report contains new discussion of new evidence. That paragraph states:

> I observed the subject dike at night on October 24, 2018, and during daylight hours on October 25, 2021. During the nighttime inspection in 2018, I was able to observe the available light aids on the subject dike in conjunction with background lighting in the area. <u>During the October 25, 2021 observation, it was noted that the dike did not appear on the GPS of the marine vessel on which I traveled to the scene</u>.

ECF No. 76-2 at 5 ¶ 2 (emphasis added). Barnett argues that the fact that the dike did not appear on the GPS "is not a surprise to the USA and did not change Dr. Borzendowski's opinion. It should not surprise the USA that an expert visited the scene of the allision. The USA could have questioned Dr. Borzendowski about this and did not." ECF No. 83 at 5. However, regardless of whether the government knew Barnett's theory of the case, it could not be expected to know that an expert, Dr. Borzendowski, would testify to the

7

visibility of the dike on a GPS. The same is true with respect to the photographs taken by Dr. Borzendowski and the additional depositions; the import of the late admission of this evidence does not turn on the government's knowledge of their existence.[1] Rather, the issue is that the government did not know that Dr. Borzendowski relied upon them, and it was a surprise to learn so after the expert disclosure deadline. Therefore, this factor weighs firmly against finding the untimely disclosure harmless.

Under the second factor, Barnett argues that the government never sought to depose Dr. Borzendowski about either the May report or November report. Barnett's argument appears to be that the government would not have deposed Dr. Borzendowski even if it had timely received the November report, and therefore, the government was not prejudiced by the late disclosure. To be sure, the government concedes in its reply that it "affirmatively made the decision" not to depose Dr. Borzendowski following the May report. ECF No. 87 ¶ 5. But notably, the government does not concede that it would have foregone a deposition if it had been aware of the new materials that Dr. Borzendowski relied upon. In any event, Barnett provided the November report to the government roughly one month before trial. Even if Barnett were correct that the government would not have deposed Dr. Borzendowski under any circumstances, the government still lost opportunities to investigate Dr. Borzendowski's materials for possible impeachment purposes and to prepare potential rebuttal testimony due to the belated disclosure.

---

[1] Although in the case of the photographs, the government likely did not have such knowledge.

Under the third factor, the court finds that allowing the testimony on the November report would disrupt trial or trial preparation. As discussed, Barnett disclosed the November report with only about one month remaining before the start of trial. If the disclosure had occurred earlier—for instance, before a trial date had been scheduled—the court may have been more inclined to allow the testimony. See Karnofsky v. Mass. Mut. Life Ins. Co., 2016 WL 741285, at *5 (D.S.C. Feb. 25, 2016) (permitting an untimely supplemental report because the case did "not yet have a set trial date," and therefore, the late disclosure would not "unduly disrupt" trial proceedings and the court could allow additional time for the opposing party to depose the expert and designate an additional rebuttal expert).[2] Additionally, Barnett disclosed the November report nearly four months after her deadline for expert disclosures. Such deviation from the scheduling order impacts the government's ability to prepare for trial in accordance with an established discovery schedule. Compare Carpenter, 2019 WL 2088425, at *4 (determining that a late supplemental report would prejudice the defendant because the plaintiff's motion to supplement "was made nearly four months after the motions'[s] deadline"), with Kristensen ex rel. Kristensen v. Spotnitz, 2011 WL 5320686, at *3 (W.D. Va. June 3, 2011) (allowing supplemental disclosures that were filed "a full week before Defendants' expert disclosures were due, and well before the close of discovery or the anticipated start of trial"). By the time the government timely filed its reply brief, less

---

[2] See also Scheer v. Costco Wholesale Corp., 2013 WL 12246634, at *2 (D. Md. June 5, 2013) (finding that although the plaintiff's "belated disclosures were neither substantially justified nor harmless," there was no justification for excluding the expert testimonies because the case had not been scheduled for trial); Springs v. Waffle House, Inc., 2021 WL 119303, at *3 (D.S.C. Jan. 13, 2021) (noting that when a trial date has not been scheduled, allowing otherwise improper expert testimony "would not disrupt trial").

than a week remained before the start of trial. As such, the court finds that fully preparing for the November report would disrupt the government's trial preparation under such a time crunch.

Next, the court finds that the fourth factor also weighs against Barnett. As courts in this district have noted, an unfounded argument that an expert's "subsequent reports constituted supplemental reports as envisioned by Rule 26(e)(1) . . . . is not very strong" and can be grounds alone for the court's "hesitan[ce] to allow [the expert's] supplemental reports to be admitted." See Karnofsky, 2016 WL 741285, at *5. As discussed earlier, the court is unmoved by Barnett's argument that the November report constitutes a supplemental report under Rule 26(e)(1). The November report was plainly not a supplemental report because it contained material information that was entirely new and not contemplated by the May report.

Under the fifth and final factor, Barnett argues that the new information in the November report is "important" because Dr. Borzendowski is "an expert in human factors." ECF No. 83 at 5. However, the relevance and importance of proffered testimony "highlights the seriousness of not noticing it in a timely fashion. Put simply, if supplemental expert testimony was critical to [a party's] case, it should have been disclosed well before the discovery cut-off." Divens v. Maust Trucking, Inc., 2020 WL 6060888, at *4 (W.D. Va. Oct. 14, 2020) (citing S. States, 318 F.3d at 598–99). In any case, the relative importance or unimportance of Dr. Borzendowski's testimony fails to outweigh the issues of surprise and delay discussed in the preceding factors. However, the court observes that outside of the new materials reviewed by Dr. Borzendowski and the corresponding analysis, the November report also includes new entries in Dr.

10

Borzendowski's curriculum vitae. These include a list of new publications since 2020 and new entries in a table listing Dr. Borzendowski's history of testifying at trials. The court finds that the new curriculum vitae entries are minimal enough such that it would not prejudice the government for Dr. Borzendowski to reference them at trial. Even if the court looked beyond the Southern States factors, the additional entries could be classified as an attempt to correct an omission such that the entries are motivated by "true supplementation" rather than "gamesmanship" under Rule 26(e). See Gallagher, 568 F. Supp. 2d at 630. In this very narrow respect, the court denies the government's motion in limine.

In sum, the Southern States factors do not support Barnett's position that the court should excuse the late expert disclosure and permit Dr. Borzendowski to testify on the new materials gathered for her review. Accordingly, the court precludes Dr. Borzendowski from testifying about the twenty-nine photographs contained in the November report; the thirteen new depositions referenced under her list of "[p]rovided documents," ECF No. 76-2 at 4; the visit to the scene of the allision on October 25, 2021; and any opinions drawn from the same. However, Dr. Borzendowski will be permitted to reference updates to her curriculum vitae since May 2021, although the court doubts such information will be probed beyond establishing Dr. Borzendowski's background, if at all.

Finally, in the government's reply brief, the government withdraws its objections to any opinion rendered by Dr. Borzendowski based on documents Bates stamped US003933–3956. ECF No. 87 ¶ 1. Since the government has withdrawn those objections, the court will permit testimony consistent with that concession.

## IV.  CONCLUSION

For the reasons set forth above, the court **GRANTS IN PART** and **DENIES IN PART** the motion in limine.

**AND IT IS SO ORDERED.**

                                      **DAVID C. NORTON**
                                      **UNITED STATES DISTRICT JUDGE**

**December 13, 2021
Charleston, South Carolina**